IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON MARIE MCGRATH,       )
                                   )
               Plaintiff,       )
                                   )     Civil Action No. 24-459
           v.               )
                                   )
CAROLYN COLVIN, SOCIAL       )
SECURITY ADMINISTRATION (ACTING),   )
                                   )
             Defendant,     )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Shannon Marie McGrath ("plaintiff") for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff contends the Administrative Law Judge (the "ALJ") a) erred by failing to provide undisputed medical limitations to the vocational expert ("VE") which impacted the full-time work the VE testified a hypothetical worker like plaintiff would be able to perform and b) the ALJ improperly used her own medical opinion to reject the opinion provided by plaintiff's treating physician. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence and should be reversed. It is plaintiff's contention that the case should be remanded for the Commissioner either for payment of benefits or for further proceedings to consider properly all the evidence of record, including all plaintiff's mental health

limitations.[1]   The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.   The court will grant defendant's motion for summary judgment (ECF No. 26) and deny plaintiff's motion (ECF No. 23) for the reasons set forth below.

## II.     PROCEDURAL HISTORY

On July 13, 2019, plaintiff protectively filed the current Title XVI application for SSI beginning December 31, 2017, which is at issue before the court. (ECF No. 27 at 3.)   The claim was initially denied on October 9, 2019, and again upon reconsideration on March 11, 2020. (R. at 109, 114.)   On March 17, 2020, plaintiff requested a hearing before an administrative law judge. (R. at 118.)   Due to the COVID pandemic a hearing was scheduled to be conducted by video.   A hearing via online video commenced before the ALJ on June 2, 2021, but plaintiff declined to continue and opted to exercise her right to postpone the case until an in-person hearing could be held. (R. at 39-46.)   Plaintiff appeared in person and testified at the rescheduled hearing conducted on January 4, 2023. (R. at 47-79.)   Plaintiff was represented by an attorney at the hearing. (Id.)   An impartial VE testified by phone at the hearing. (Id.)

In a decision dated February 20, 2023, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under § 1614(a)(3)(A) and was "capable of making a successful

---

1.  Plaintiff's appeal does not contest the opinion of the ALJ relative to any previously claimed physical limitations; accordingly, any physical impairments will not be addressed in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived").

adjustment to other work." (R. at 32.)   Plaintiff timely requested a review of that determination

and by letter dated January 31, 2024, the Appeals Council denied the request for review.   The

decision of the ALJ became the final decision of the Commissioner. (R. at 1-4.)   Plaintiff

subsequently commenced the present action seeking judicial review.


III.     LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for

benefits is provided by federal law. 42 U.S.C. § 405(g).   The judicial review of a final decision

is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431

(3d Cir. 1999).   With respect to factual findings, this court must determine whether there is

substantial evidence which supports the findings of the Commissioner.   "Substantial evidence is

'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v.

Perales, 402 U.S. 389 (1971)).   The deferential standard has been referred to as "less than a

preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d

Cir. 2002).

This standard, however, does not permit the court to substitute its own conclusion for that

of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether

the administrative law judge's findings "are supported by substantial evidence" regardless

whether the court would have differently decided the factual inquiry).   The court will not affirm

a determination by substituting what it considers to be a proper basis even if it might have

reached a different conclusion. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196-7

(1947).   The Third Circuit Court of Appeals had held that an administrative law judge has a

legitimate basis to discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018).  "The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984)).

## IV.    PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE

### A.    Plaintiff

Plaintiff was born on May 11, 1973, and was 46 years old at the time her application was filed in 2019. (R. at 30.)   She graduated from high school and earned an associate's degree in culinary arts. (R. at 53-54.)   Plaintiff lives by herself and although she has a license to drive a car, she lost her vehicle several years ago. (R. at 52-53.)   She had a daughter, but the daughter died unexpectedly while an infant. (R. at 67, 554.)   Plaintiff's current medication list includes: "Suboxone, ascorbic acid, Venlafaxine, Ritalin, Stratera (sic), and Neurontin." (R. at 551.) Plaintiff has held a variety of full and part-time jobs over the years, but alleges she has been unable to work since the end of 2018. (R. at 55.)   Plaintiff's last employment was as a bartender in 2018. (R. at 55, 461-462.)   Since 2018, plaintiff reported she has performed cleaning for her mother (R. at 54) and considered moving to Harrisburg to find work as a bartender. (R. at 21, 595.)   During the hearing, the ALJ heard testimony from plaintiff regarding her limitations, predominantly focusing on her mental limitations. (R. at 49-79.)

Plaintiff's claimed disability beginning date is December 31, 2017. (R. at 17.)   She alleges that she is unable to work because of "brain fog," "panic attacks … [that] can happen out of anywhere," anxiety, and problems with concentration, understanding things, and memory. (R.

4

at 58-61.)    Plaintiff's appeal of denial of SSI focuses on the mental health limitations that the

ALJ, after determining plaintiff's residual functional capacity ("RFC"), presented to the VE for

consideration in determining other work an individual similar to what plaintiff could likely

perform. (Pl.'s Br. ECF No. 24 at 6-7.)

     **B.**    **Mental Health Medical Record**

          **1.**    **Recovery Care Psychiatrist Dr. Rosen and Nurse Practitioner**
              **Jennifer Stout**

Since April 3, 2019, plaintiff was regularly seen at Recovery Care for opioid addiction

counseling and suboxone medication compliance. (R. at 649-826, 856-1172.)    She was seen by a

variety by nurse practitioners at Recovery Care, with certified registered nurse practitioner

("CRNP") Jennifer Stout assuming exclusive responsibility for all reporting about plaintiff after

April 5, 2022. (R. at 1088-1172.)    Dr. Heather Rosen, plaintiff's supervising psychiatrist,

reviewed and signed off on all therapy session encounter reports with plaintiff conducted by any

of Recovery Care's staff nurse practitioners. (R. at 649-826, 856-1172.)    Plaintiff's "problem

list" on each encounter report listed "nicotine dependence – uncontrolled (current), continuous

opioid dependence – stable (current), anxiety – stable (current), ADHD – attention deficit

disorder with hyperactivity – stable (current), [and] chronic back pain (current)." (Id.)

Plaintiff's primary care providers, CRNP Stout and Dr. Rosen, M.D., jointly completed a

medical evaluation questionnaire on December 26, 2022. (R. at 411-12.)    They listed on the

questionnaire plaintiff's primary diagnoses as ADHD, opioid use disorder in remission, anxiety

and depression. (R. at 1173.)    In the free text field for treatment and responses they noted that

plaintiff had "symptom improvement (moderate)" for anxiety and depression with prescribed

medication. (Id.)    In the checked boxes on the form, they did not indicate that plaintiff had

5

"marked difficulty with concentration," "marked difficulty with memory" or "inability to operate vehicle/machinery." (Id.)   They noted plaintiff was "seriously limited" in five areas: "concentrate, persist or maintain pace; understand and remember work terms, instructions, procedures; identify and solve problems; concentrate, persist or maintain pace without unreasonable delay or need for rest periods; [and] deal with normal work stress." (R. at 1175.) Plaintiff was listed as "moderate/fair" or "unlimited/very good" in the other twelve areas rated within the "mental abilities and aptitude needed to do Perform Work Duties" question.   (Id.) For the subparts under each of the questions: "mental abilities and aptitude needed to do Interact with Others" and "mental abilities and aptitude needed to do Particular Types of Jobs," plaintiff was marked as "unlimited/very good" for four of five limitation areas and scored as "moderate/fair" for respectively "describe work activity to someone else" and "handle conflict with others." (R. at 1176.)   They posited that plaintiff's impairments would cause her to be absent from work "about four days per month" and the limitations are "unknown at this time" to be permanent. (R. at 1178.)

## 2.    State Agency Medical Consultants

Plaintiff's medical record file was reviewed by state agency medical consultants for independent disability determination analysis and RFC to work. (R. at 80-107.)   Gregory Mortimer, M.D., on September 26, 2022, noted findings about plaintiff's medical conditions, and a mental health professional, Roger Fretz, Ph.D., provided a psychiatric review on October 10, 2019. (R. at 86-87.)   On reconsideration, Virginia Martin, Psy.D., on March 9, 2020, assessed plaintiff's mental health record, (R. at 101), and Virginia Dato, M.D., reviewed other medical conditions on March 5, 2020. (R. at 10.)

6

Each mental health consultant determined that while plaintiff was impacted due to her limitations, she was able to be managed with medication treatment (R. at 88, 102.)   Dr. Fretz found plaintiff had moderate restrictions in "understanding, remembering, and applying information" and in "concentration, persistence, or maintaining pace," leading to his determination that plaintiff could perform simple tasks. (R. at 26.)   Dr. Martin found the same moderate limitations, but determined plaintiff "can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)." (R. at 26, 104.)   Each noted the activities of daily living that plaintiff was capable of continuing, with limitations and adaptation, and because of the plaintiff's age, education, and RFC, each recommended a finding of "not disabled" because plaintiff can adjust to other work. (R. at 90, 105.)

### 3.    Other Consultive Mental Health Examiners

Plaintiff had one-time examination visits with other consultive mental health providers for status examinations in support of her SSI application claim.   At her attorney's request, plaintiff saw Daniel Marston, Ph.D., on May 22, 2019, who noted plaintiff's anxiety most prominently during the exam, which impacted her ability to concentrate. (R. at 613-616.)   Dr. Marston opined that plaintiff's anxiety would "impact on her ability to hold any sort of job." (R. at 28, 616.)   Plaintiff also saw Chantal Deines, Psy.D., on September 20, 2019, for a consultive examination. (R. at 632.)   Dr. Deines prepared a medical source statement following her exam of plaintiff and indicated no greater than mild impairment in any area she assessed. (R. at 639-641.)

### C.    ALJ's Findings

Proceeding through the sequential evaluation process, the ALJ determined that the plaintiff had not engaged in substantial activity since her application for benefits at step one, (R.

7

at 19); acknowledged the plaintiff had severe impairments of ADHD, anxiety disorder, major

depressive disorder, and opioid dependence at step two, (Id.); and found that the plaintiff's

combination of impairments did not meet the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1 at step three. (R. at 20.)   Plaintiff exhibited multiple moderate

limitations, but none that rose to the level of serious or extreme as required to satisfy the

"paragraph B" criteria, and the record of her conditions did not satisfy the "paragraph C" criteria.

(R. at 21.)

Prior to commencing step four, the ALJ determined plaintiff's RFC.   The ALJ

considered plaintiff's entire medical record, to include the medical opinions and state

administrative medical reviewers' reports discussed above, and determined plaintiff's RFC as

follows:

> [plaintiff] has the residual functional capacity to perform a full range of work
> at all exertional levels but with the following nonexertional limitations:
> - No ladders, ropes, or scaffolds;
> - No work at unprotected heights or around dangerous machinery;
> - Limited to simple, routine and repetitive tasks, but not at a production
>   rate pace;
> - Limited to simple work-related decisions; and
> - Would require a position necessitating only occasional change to the
>   work routine.

(Id.)

At step four, for purposes of assessing prior work, the ALJ determined plaintiff has no

past relevant work. (R. at 30, 31, 54, 70.)   With respect to the findings at step five, the ALJ

posited a series of hypothetical questions to the VE to determine whether there was work

plaintiff was capable of performing given her limitations. (R. at 70-78.)   Utilizing data like

plaintiff's data, with respect to her age, education, work history, and based on the ALJ's

direction at the hearing to "assume non-exertional limitations only," the VE opined there would

8

be jobs available at the medium, light, and sedentary exertional levels available in the national economy that a hypothetical individual with an RFC like plaintiff would be capable of performing. (R. at 71.)   The VE was then asked other hypotheticals by the ALJ, adding additional limitations for reduced interactions with other people, and "postural limitations" to limit frequent "ramps and stairs as well as balancing, stooping, kneeling, and crouching. Only occasional crawling." (R. at 72-73.)   The VE reported that, with a substitution of the position at the medium exertional level and the same jobs identified previously at the light and sedentary level, positions remained available in the national economy that the hypothetical individual, like plaintiff, would be capable of performing. (Id.)

The VE testified that if the hypothetical individual would be off task two days per month or miss twenty percent of the workweek, there would be no jobs available for that individual. (R. at 73.)   The ALJ determined at step five that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform…." (R. at 31.)   The ALJ concluded that plaintiff was not disabled. (R. at 32.)

## V.    DISCUSSION

### A.    Alleged Errors

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, she argues that the ALJ erred because the "hypothetical questions posed by the ALJ to the vocational expert [did] not include all of [plaintiff's] pertinent impairments established by the record…." (Pl.'s Br., ECF. No. 24 at 7.)   By not utilizing all the findings in Dr. Rosen and CNRP Stout's joint opinion, plaintiff avers that the ALJ utilized her own medical opinion rather than accept the medical conclusions of the treating physician. (Id. at 10-11.)

1.      **Alleged Error in Not Presenting All Moderate/Fair Limitations in the Joint Opinion of Dr. Rosen and CRNP Stout to the VE**

Plaintiff contends that the ALJ "accepted 11 pertinent mental health limitations offered by Plaintiff's treating providers, then simply failed to ask the VE about their impact on full-time work." (Id. at 10.)   The ALJ did not, however, outright accept all of Dr. Rosen/CNRP Stout's joint opinion.   She found their opinion "*somewhat* persuasive," and that the "moderate/fair ability" and "very good ability" were "*generally* supported by plaintiff's treatment records." (R. at 27) (emphasis added).   The ALJ similarly did not completely accept the opinions of any of the other mental health examiners that examined plaintiff, either in person or through records review. (R. at 26-29.)   With respect to the state mental health medical examiners, the ALJ found them "generally persuasive because they are generally supported by and consistent with the evidence." (R. at 26.)   She found Dr. Marston's evaluation to be "not persuasive overall" because it was "not consistent with the other evidence of record." (R. at 28.)   The ALJ found Dr. Deines' evaluation to be "partially persuasive" and "generally supported" by her exam of plaintiff, but the ALJ felt plaintiff's record as a whole supported "greater restrictions overall" that what Dr. Deines had indicated on the medical source statement she completed. (R. at 29.)

The ALJ found plaintiff's depression, anxiety ADHD, and opioid dependence to be severe medical impairments in step two. (R. at 19.)   The severity of those impairments' impact on plaintiff's level of functioning on a sustained basis, however, was considered across the totality of plaintiff's medical record.   Here, the ALJ found plaintiff had a moderate limitation in understanding, remembering or applying information; a mild limitation in interacting with others; a moderate deficiency in concentration, the ability to persist or maintain pace; and a mild limitation in adapting or managing oneself. (R. at 20-21.)

10

> Although an ALJ must consider limitations imposed by all of an individual's impairments, both severe and non-severe, when making their RFC assessment, there is no requirement that an ALJ must find or include limitations associated with mild impairments.
>
> …
>
> Because [claimant's] mild mental impairments did not translate into work-related limitations, the ALJ's failure to explicitly discuss those impairments in the RFC analysis does not amount to an error.

<u>Long v. Kijakazi</u>, No. CV 20-1358-MN, 2022 WL 609620, *7, *8 (D. Del. Jan. 31, 2022), <u>report and recommendation adopted,</u> No. CV201358MNSRF, 2022 WL 609160 (D. Del. Feb. 15, 2022).

The categories for limitations on an individual's work-related mental activities listed on a medical source statement are: none, mild, moderate, marked, extreme. (<u>See</u> R. at 639.)

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

<u>Gunn v. Kijakazi</u>, 705 F. Supp. 3d 315, 330 (E.D. Pa. 2023) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). SSR 96-8p and POMS DI 24510.006).   The Third Circuit Court of Appeals noted:

> When mental health is at issue, the functional limitation categories are "used to rate the severity of mental impairment(s)[.]" SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996). While obviously related to the limitation findings, the RFC is a determination of "the most [a claimant] can still do despite [his] limitations" "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8P, at *2. … [T]he RFC "must be expressed in terms of work-related functions[,]"…. In short, the

11

findings at steps two and three will not necessarily translate to the language used at steps four and five.

Additionally, and perhaps more importantly, social security regulations permit, and indeed require, an ALJ to offer "a narrative discussion describing how the evidence supports each" limitation at step four of the disability analysis. Id. at *7. That suggests a wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019).

The Third Circuit Court of Appeals has agreed that for claimants with "moderate" limitations in "concentration, persistence, or pace," like plaintiff in this case has, a limitation for "simple tasks" is acceptable and will "fairly reflect a claimant's impairments" if the ALJ provides a "valid explanation." Id. at 210; see Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004). In nearly nine pages of the ALJ's decision, the ALJ offered the kind of narrative discussion described in Hess to explain the work-related limitations she found appropriate and why "although the record shows that the [plaintiff] has some of the symptoms she alleges, it does not show that her symptoms are as severe as she alleges." (R. at 26.)

Here, the ALJ discussed and found that some of the treating and state agency consultive medical source opinions conflicted, although they were generally supported by the record. Where the findings of the medical sources differed, the ALJ explained why she determined what limitations were appropriate in this case. The ALJ's findings fall somewhat between the different medical source findings. The ALJ found persuasive some of the treating professionals' opinions and some of the state agency consultants' opinions. Under those circumstances, the ALJ could determine what work-related functions were supported by the record as a whole. See Zappala v. Barnhart, 192 F. App'x 174, 177 (3d Cir. 2006) ("[T]he possibility that two inconsistent conclusions may be drawn from the evidence contained in the administrative record does not

12

prevent an agency's finding from being supported by substantial evidence.").   It was not error for the ALJ to do so.   There is substantial evidence to support the ALJ's findings. The ALJ, in in determining plaintiff's RFC, explained the work-related limitations she found after review of the record and presented hypotheticals to the VE based on those findings.   The VE's identification of jobs plaintiff would be able to perform that exist in significant numbers in the national economy took those limitations into consideration.

> **2.     The ALJ Used Her Own Medical Opinion to Reject the Opinion of the Treating Medical Doctor**

Plaintiff alleges that Dr. Rosen/CNRP Stout's joint opinion should have been accepted barring any contradictory medical evidence. (Pl.'s Br. ECF No. 24 at 10-11.)   For claims filed after March 27, 2017, like the claim in this case, the policy about how to evaluate medical evidence was altered.[2]

> The new rules provide that adjudicators will evaluate all medical opinions and findings using the factors delineated in the new regulations; supportability and consistency are the most important factors and their application must be explained; other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's: "treatment relationship" with the claimant including length, frequency, purpose and extent of the treating relationship and whether the source has an examining (as opposed to non-examining) relationship with the claimant; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the SSA disability program's policies and evidentiary requirements.

---

2.   The prior policy gave treating physicians' opinions controlling weight (the "treating physician rule") where their positions were supported by medical evidence and were not otherwise inconsistent with other substantial evidence in the record. See Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in

Federal Court 172 (2025 ed., Thomson Reuters, 2025) (quoting 20 C.F.R §§ 404.1520c(b), (c);

416.920c(b), (c), (2017)).   In applying the altered policy, a district court commented:

> [I]n March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis…. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability*," [and a]n ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.

Densberger v. Saul, No. 1:20-CV-772, 2021 WL 1172982 at *7-8 (M.D. Pa. Mar. 29, 2021)

(quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)) (emphasis added).

The ALJ considered and addressed the supportability and consistency of Dr.

Rosen/CNRP Stout's opinion.   She explained why the opinion of Dr. Rosen/CNRP Stout was

considered, but only found to be "somewhat persuasive." (R. at 27.)   The ALJ noted that a) Dr.

Rosen/CNRP Stout's joint opinion with findings of "'serious' limitations are not persuasive

because they are not supported by the claimant's treatment records and are inconsistent with the

evidence as a whole." (R. at 27); b) Dr. Rosen/CNRP Stout's treatment "records rarely if ever

note any clinical signs of reduced concentration or clinical signs of high anxiety."; and c) the

evidence indicates plaintiff has "reported improvement with consistently taking medication." (Id.).

As noted, there were conflicting medical source opinions considered by the ALJ. The ALJ found some of the opinions by Dr. Rosen/CRNP Stout, as well as those of other medical sources, that were consistent to their opinions generally supported. The ALJ extensively addressed the reasons why she found each mental health professional's opinion not fully persuasive, including, in the case of Dr. Deines, why the ALJ felt plaintiff's medical record warranted greater restrictions than Dr. Deines' opinion advocated. (R. at 29.) "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved for the Commissioner." Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 447 (2025 ed., Thomson Reuters, 2025) (quoting Winn v. Comm'r Soc. Sec. Admin., 894 F.3d 982, 987 (8th Cir. 2018). There is substantial evidence to support the weight given by the ALJ to Dr. Rosen/CNRP Stout's joint opinion and she sufficiently explained the reasons for her conclusions in the development of plaintiff's RFC, which was used in presenting hypothetical scenarios to the VE.


**VI.    CONCLUSION**

The ALJ explained why Dr. Rosen/CRNP Stout's opinion was somewhat persuasive and determined that plaintiff had the capacity to conduct work as defined in the RFC, despite the severe disabilities identified in step two, and with insight to plaintiff's mental health issues in the body of the ALJ's decision.

Having considered the parties' motions, the record as a whole and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision. The court

15

will grant defendant's motion for summary judgment (ECF No. 26) and deny plaintiff's motion for summary judgment (ECF No. 24).

An appropriate order and judgment will be entered.


Dated: August 28, 2025

BY THE COURT:


s/Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge

16